**Freshfields Bruckhaus Deringer US LLP**
Michael Lacovara, Esq., Cal. Bar. #209279
601 Lexington Avenue
New York, NY 10022
Tel:    (212) 277-4000
Fax:    (212) 277-4001
michael.lacovara@freshfields.com

*Attorneys for Applicant Societe D'Etude*
*De Realisation et D'Exploitation Pour Le*
*Traitement du Mais*

**Filed**

NOV 1 5 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

*In re* Ex Parte Application of

SOCIETE D'ETUDE DE REALISATION
ET D'EXPLOITATION POUR LE
TRAITEMENT DU MAIS,

Applicant,

For an Order Pursuant to 28 U.S.C. § 1782
Granting Leave To Obtain Discovery From
Google, Inc. for Use in Foreign Proceedings

CV 13   80261 MISC-LHK PSG

Case No. :

*EX PARTE* APPLICATION FOR AN
ORDER PURSUANT TO 28 U.S.C. § 1782
GRANTING DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS; [PROPOSED]
ORDER AND SUBPOENA

EX PARTE APP
UNDER 28 U.S.C. § 1782

## TABLE OF CONTENTS

INTRODUCTION .......................................................................................................1

FACTUAL BACKGROUND.......................................................................................2

    I.   Seretram is the Victim of Fraud...............................................................2

    II.  Seretram's Efforts Subsequent to Discovery of the Fraud.......................4

    III. The Gmail Account....................................................................................4

ARGUMENT...............................................................................................................5

    I.   Seretram's Application Satisfies the Statutory Requirements for Assistance Under Section 1782.........................................................................................5

    II.  Seretram's Application Satisfies the Discretionary Factors for Assistance under Section 1782.........................................................................................7

CONCLUSION............................................................................................................9

[PROPOSED] ORDER..............................................................EXHIBIT A

[PROPOSED] SUBPOENA.......................................................EXHIBIT B

EX PARTE APP
UNDER 28 U.S.C. § 1782

1

## TABLE OF AUTHORITIES

2
                                                                    **Page(s)**

3
CASES

4
*Application of Jean-Michael Lee-Shim,*
   No. 5:13-mc-80199-LHK-PSG, 2013 WL 5568713 (N.D. Cal. Oct. 9, 2013)....................9, 11

5

6
*In re Application of Guy,*
   No. M 19-96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004) ....................................................11

7
*In re Application of Procter & Gamble Co.,*
8
   334 F. Supp. 2d 1112 (E.D. Wis. 2004).................................................................................11

9
*In re Consellior SAS, et al.,*
   No. 13 MC 34, 2013 WL 5517925 (D.Conn. Oct. 2, 2013) ....................................................11

10

11
*In re the Republic of Ecuador,*
   No. C-10-80225-MISC-CRB (EMC), 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) .....10, 11

12
*Intel Corp. v. Advanced Micro Devices,*
13
   542 U.S. 241 (2004)...............................................................................................9, 10

14
STATUTES

15
28 U.S.C. § 1782............................................................................................................. passim

16
28 U.S.C. § 1782(a) .......................................................................................................9, 10, 11

17

18

19

20

21

22

23

24

25

26

27

28

                                                                                     **EX PARTE APP**
                                                              **UNDER 28 U.S.C. § 1782**

1    Societe D'Etude De Realisation et D'Exploitation Pour Le Traitement du Mais
2  ("Seretram" or "Applicant"), by its attorneys, Freshfields Bruckhaus Deringer US LLP,
3  respectfully seeks an order, *ex parte*, pursuant to 28 U.S.C. § 1782 requiring Google, Inc.
4  ("Google") to produce documents in support of foreign proceedings brought by Seretram.

5                                    **INTRODUCTION**

6    Seretram is the victim of a €17 million fraud that spans multiple countries and has
7  spawned criminal proceedings in Europe.  In late October 2013, a fraudster impersonated
8  Seretram's financial director and e-mailed an employee in the company's finance department to
9  instruct her to transfer millions of euros to an account held by Oasis Tree Limited ("Oasis"), a
10 Northampton, England based company that appears to have been a mere shell.  By the time
11 Seretram uncovered the fraud, the employee – who had believed herself to be acting under direct
12 orders from her superior – had transferred over € 17.3 million.  The fraudster and (Applicant
13 believes) much of the money have vanished.

14   Seretram immediately commenced diligent efforts to locate the fraudster and recover the
15 money.  Criminal proceedings are underway in France and are expected in the U.K.  Courts in
16 British Columbia and London have issued orders compelling discovery of information related to
17 the Oasis bank account and the e-mail account used to impersonate Seretram's finance director,
18 and a Hong Kong court has frozen bank accounts that appear to have received money from
19 Oasis.

20   Seretram asks the Court to facilitate discovery of information related to another e-mail
21 account linked to this fraud.  Claes Sebastian Strahle, the man behind Oasis and the presumptive
22 fraudster, maintains a Google "Gmail" account.  Seretram needs information about this account,
23 particularly IP access logs, to locate Mr. Strahle (who has thus far evaded detection).
24 Information about that account is vital to Seretram's efforts to locate Mr. Strahle and any
25 accomplices he may have.

26   Seretram's application satisfies the statutory and discretionary requirements for discovery
27 pursuant to § 1782.  First, Google's global headquarters is located within this district.  Second,
28 the proceedings pending in France and anticipated in the U.K. are "proceeding[s]" before

1

**EX PARTE APP**
**UNDER 28 U.S.C. § 1782**

1  "foreign tribunal[s]."   Third, Seretram, as the victim of the fraud, is "interested" in the
2  proceedings.  Finally, the information sought is relevant and properly obtainable, the request is
3  narrowly tailored, and Google is not involved in the foreign proceedings.

4        Seretram respectfully requests that the Court authorize discovery of the account
5  information and IP access logs for the Gmail e-mail address in support of the French and English
6  proceedings.

7  **FACTUAL BACKGROUND**

8        Seretram is a food-processing company located in Labatut, France and registered with the
9  trade and companies register of Dax.  It has approximately € 19 million in capital.  Andre Kern
10  ("Kern") is Seretram's president, Benoit Thebault is its managing director, and Andre Yvin
11  ("Yvin") is its financial director.  *See* Declaration of Michael Lacovara (the "Lacovara Dec."),
12  Ex. A (the "Yvin Witness Statement") at ¶ 3.  Seretram is 50% owned by the General Mills
13  Corporation.

14  I.  **Seretram is the Victim of Fraud.**

15        On the morning of October 24, 2013, a Seretram accountant named Annie Larrouture
16  received a phone call from someone purporting to represent a company called Laborde Finance.
17  This person asked Ms. Larrouture whether Yvin had "informed her about the bank transfers,"
18  and then provided her with information relating to the process by which Seretram transfers
19  funds.  Yvin Witness Statement at ¶ 10.  Shortly after this call, Ms. Larrouture received an e-mail
20  from the account andre.yvin@hush.ai (the "Hush Address"), which the author falsely claimed
21  was Yvin's personal e-mail address.   The author, pretending to be Yvin, informed Ms.
22  Larrouture that she had been selected to collaborate in a "highly confidential" (and, as it turned
23  out, non-existent) buyout transaction, that she could not communicate with anyone about the
24  transaction, and that she could communicate with Yvin only at the Hush Address (and
25  specifically could not contact him at his regular work email).  The e-mail also directed her to

26
27
28

2

**EX PARTE APP**<br>**UNDER 28 U.S.C. § 1782**

1  contact "our legal firm" at cabinet.laborde-finance@gmx.com.[1]  *Id.* at ¶ 11; Lacovara Dec. Ex.

2  B. Yvin is not familiar with this e-mail address or any company named Laborde Finance.

3      Later that day, Ms. Larrouture received another e-mail from the Hush Address instructing

4  her to prepare a transfer of € 2,672,026 from Seretram's account at Credit Agricole to an account

5  at National Westminster Bank ("NatWest") maintained for the benefit of Oasis (the "Oasis

6  Account").  Yvin Witness Statement at ¶ 12.  Oasis is a corporation formed under the laws of

7  England and Wales in February 2012 and registered in Northampton.  Claes Sebastian Strahle

8  ("Strahle"), a Swedish national allegedly resident in the U.K., is Oasis' sole director,

9  shareholder, and business manager.  *Id.* at ¶ 5.  Ms. Larrouture prepared the appropriate transfer

10  order and sent it to the Hush Address for approval.  Shortly thereafter, it was returned to her with

11  the forged signatures of Yvin and Kern.  Ms. Larrouture sent the order to Credit Agricole to

12  execute the transfer.  *Id.* at ¶ 13.

13      The fraudster impersonating Yvin contacted Ms. Larrouture again on October 28, 2013 to

14  request another transfer to the Oasis Account, this time in the amount of € 4,377,052.  The

15  fraudster once more forged Yvin's and Kern's signatures on the transfer order, and Ms.

16  Larrouture executed the transaction that day.  *Id.* at ¶ 14.  This occurred two more times, both on

17  October 30, 2013: one transaction was for € 5,339,023, and the other was for € 4,997,013.  *Id.* at

18  ¶ 16.  On October 29, 2013, Ms. Larrouture told Seretram's Accounts Manager, Jerome Carrau,

19  about the "highly confidential" matter Yvin had asked her to handle.  Carrau did not suspect

20  fraud, and, based on the directions given to Ms. Larrouture, did not discuss the matter with Yvin.

21  *Id.* at ¶ 15.

22      By this point, the fraudster had stolen € 17,385,114 from Seretram.  On October 31,

23  2013, the owner of the Hush Address requested that another € 7,133,017 be transferred to the

24  Oasis Account.  When Ms. Larrouture went to execute the transaction, she was informed by

25  Credit Agricole that there were insufficient funds in Seretram's account and that the account had

26  reached its overdraft limit.  Carrau attempted to replenish the account with funds held by

27

28  [1]  All quotations from e-mails sent to or from the Hush Address are translated for the Court's convenience from the original French.

3

**EX PARTE APP
UNDER 28 U.S.C. § 1782**

1  Seretram at Credit Lyonnais, but Credit Lyonnais informed him that it suspected fraud and he
2  stopped the transaction. *Id.* at ¶¶ 17-18.

3      Carrau then told Yvin that Seretram may have been the victim of a fraud, and the
4  company immediately contacted Credit Agricole to block all of the transfers to the Oasis
5  Account. Seretram soon learned that Oasis had already moved the € 17 million elsewhere. *Id.* at
6  ¶ 19.

7  **II.    Seretram's Efforts Subsequent to Discovery of the Fraud**

8      On November 5, 2013, Seretram, through its agents, notified law enforcement authorities
9  in the United Kingdom that it had been defrauded and filed a criminal complaint with the Public
10  Prosecutor in Dax, France. *Id.* at ¶ 21. The following day, London police informed Seretram's
11  agent that they would seek a criminal production order compelling NatWest to disclose
12  information about the Oasis Account. Seretram obtained its own order compelling production of
13  the Oasis Account records from the London High Court on November 7, 2013. The Royal Bank
14  of Scotland, NatWest's parent, produced those records the following day (the "RBS
15  Production"). Among the documents in the RBS Production was a copy of the original
16  application for the Oasis Account. It indicates that Strahle opened the account on September 26,
17  2012, and that his e-mail address is claes79@gmail.com (the "Gmail Account"). Lacovara Dec.
18  Ex. C.

19      Based on information contained in the RBS Production, Seretram sought and obtained an
20  order from the High Court of Hong Kong on November 11, 2013 freezing bank accounts that had
21  received transfers from the Oasis Account. Lacovara Dec. at ¶ 8. Seretram is pursuing
22  information related to the Hush Address.

23  **III.    The Gmail Account**

24      The domain name "gmail.com" used in the Gmail Account is maintained by Google,
25  which is located in this district. Lacovara Dec. Ex. D. It accepts service of process at its offices
26  located at 1600 Amphitheatre Parkway, Mountain View, CA. Lacovara Dec. at ¶ 10. Google
27  maintains detailed records of its "gmail.com" accounts, including user information and logs of
28  the IP addresses from which the accounts are accessed. Lacovara Dec. Ex. D at 4-5. Seretram

**EX PARTE APP**
**UNDER 28 U.S.C. § 1782**

needs this information to locate the elusive Strahle, as he can be presumed to be more likely to use his personal Gmail Account on a regular basis than the fraudulent Hush Address. Google's policy is not to provide such information without a valid subpoena. *Id.*

### ARGUMENT

Seretram's application satisfies the statutory elements *permitting* the Court to authorize discovery under Section 1782 and the discretionary elements outlined by the Supreme Court to guide the inquiry under that Section.

Section 1782 provides that:

> The district court of the district in which a person resides or is found may order him to . . . produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person . . . .

28 U.S.C. § 1782(a). Satisfaction of the elements of the statute vest the Court with discretion to issue a subpoena; that discretion in turn should be guided by (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 264-65 (2004).

Seretram satisfies each of these factors.

I.   **Seretram's Application Satisfies the Statutory Requirements for Assistance Under Section 1782.**

Seretram's application satisfies the statutory Section 1782 factors. *See In re ex parte Application of Jean-Michael Lee-Shim*, No. 5:13-mc-80199-LHK-PSG, 2013 WL 5568713 (N.D. Cal. Oct. 9, 2013).

EX PARTE APP
UNDER 28 U.S.C. § 1782

First, there is no question that Google resides in this district. Incorporated in 1998, Google is a California corporation whose global headquarters is located at 1600 Amphitheatre Parkway in Mountain View, CA. Google's policy is to accept service only at this address. Lacovara Dec. at ¶ 10. Mountain View is within the borders of the Northern District of California.

Second, the requested discovery is intended for use in at least two foreign proceedings: the pending criminal case in France, and the anticipated criminal investigation in England. Section 1782 includes both proceedings, which are "criminal investigations conducted before formal accusation," and are thus a "proceedings before a foreign or international tribunal." 28 U.S.C. § 1782(a); *see Intel*, 542 U.S. at 264-65 (stating that all that is necessary to satisfy section 1782's "proceedings" requirement is that a "dispositive ruling" by the foreign adjudicative body be "within reasonable contemplation").

Third, as the victim of the €17 million fraud at issue in the French and British proceedings, Seretram is an "interested person." *See id.* at 256 ("even 'a complainant' in an investigation qualifies as an 'interested person'").

Finally, it is proper for Seretram to seek this order on an *ex parte* basis. Google will not suffer prejudice because it will be entitled to object or move to quash the subpoena once it is served. *See, e.g., In re the Republic of Ecuador*, No. C-10-80225-MISC-CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010) ("[I]t is common for the process of presenting the request to a court and to obtain the order authorizing discovery to be conducted ex parte. Such ex parte applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will have the opportunity to move to quash the discovery or to participate in it.") (internal citations omitted). Furthermore, if Seretram is to have any hope of recovering the stolen money and otherwise seek redress against the person or persons who perpetrated the fraud, it must obtain discovery on an expedited basis. Requiring this application to proceed on notice would offer no additional protections to Google, but would waste valuable time.

6

EX PARTE APP
UNDER 28 U.S.C. § 1782

II.     **Seretram's Application Satisfies the Discretionary Factors for Assistance under Section 1782.**

Seretram's application also satisfies *Intel*'s discretionary elements.

First, Google is not a party to, or a target of, the investigations in France or England. It has not been subpoenaed in either proceeding, and it is unclear whether a court in either foreign jurisdiction would have the power to order production of the information sought here absent Section 1782 or comparable relief in any event. *See Lee-Shim*, 2010 WL 3702427, at *2 (holding that because target of requested discovery was not a party to the foreign proceedings and their documents may be out of the foreign tribunal's reach, this factor "weighs heavily" in applicant's favor).

Second, the Gmail Account is the personal e-mail account of the alleged architect of this fraud, Strahle.  Information pertaining to when the account was created and where it was accessed from would permit Seretram and the authorities to pinpoint Strahle's location and gain insight as to where the € 17 million may have gone after it left the Oasis Account.  Furthermore, there is no policy in either France or the United Kingdom that would cause either sovereign to reject the assistance of the United States courts; absent such a policy, the court should exercise its discretion to authorize discovery under Section 1782. *See In re Application of Guy*, No. M 19-96, 2004 WL 1857580, at *2 (S.D.N.Y. Aug. 19, 2004) (finding no reason to believe that the U.K. "would disfavor granting Applicants relief under § 1782"); *In re Consellior SAS, et al.*, No. 13 MC 34, 2013 WL 5517925, at *2 (D.Conn. Oct. 2, 2013) (authorizing discovery where there was "no indication that the French court would not be receptive to the grant of the [Section 1782] application"); *see also In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004) ("to decline a § 1782(a) request based on foreign nondiscoverability, a district court must conclude that the request would undermine a specific policy of a foreign country . . . .").

Third, Seretram is not seeking to circumvent limitations on disclosure or discovery in the French or United Kingdom proceedings. *See, e.g., In re Consellior SAS, et al.*, 2013 WL

EX PARTE APP
UNDER 28 U.S.C. § 1782

5517925, at *2 (granting discovery upon a finding that Section 1782 applicants were not trying to circumvent foreign discovery restrictions). To the contrary, the information sought by the proposed subpoena to Google is consistent with the conduct of the London High Court, which already ordered a significant amount of discovery of the Oasis Account on an expedited basis. *See* Lacovara Dec. at ¶ 6.

Finally, Seretram has tailored its requests to cover only information about the Gmail Account, its owner, and any Google services linked to the account that Google has stated it provides in response to a subpoena: subscriber information (such as the accountholder's name, the creation date of the account, and any phone numbers or e-mail addresses associated with the account), sign-in IP addresses and time stamps indicating when the account was accessed from that IP address, and any billing information for paid services linked to the Gmail Account. Lacovara Dec. Ex. E at 4-5. The request seeks information that will help Seretram identify and locate the fraudster and, ideally, trace the money that was stolen. The universe of responsive information is likely to be readily identifiable and easy to produce.

**EX PARTE APP**
**UNDER 28 U.S.C. § 1782**

## CONCLUSION

Seretram respectfully requests that the Court enter the proposed *ex parte* order authorizing discovery from Google pursuant to 28 U.S.C. § 1782, as set forth in the accompanying subpoena.

Dated: November 15, 2013
New York, NY

Respectfully submitted,

FRESHFIELDS BRUCKHAUS DERINGER
US LLP

Michael Lacovara, Esq.
California Bar Number 209279
601 Lexington Avenue
New York, NY 10022
Phone:  (212) 277-4000
Fax: (212) 277-4001
michael.lacovara@freshfields.com

*Attorneys for Societe D'Etude De Realisation
et D'Exploitation Pour Le Traitement du
Mais*

**EX PARTE APP
UNDER 28 U.S.C. § 1782**

# Exhibit A

1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **NORTHERN DISTRICT OF CALIFORNIA**
10                        **SAN JOSE DIVISION**
11
12
13   SOCIETE D'ETUDE DE REALISATION          Case No.
     ET D'EXPLOITATION POUR LE
14   TRAITEMENT DU MAIS,                      **[PROPOSED] ORDER GRANTING *EX***
                                              ***PARTE* APPLICATION FOR SUBPOENA**
15              Applicant.                    **PURSUANT TO 28 U.S.C. § 1782 IN AID**
                                              **OF FOREIGN PROCEEDINGS**
16
17
18       Societe D'Etude De Realisation et D'Exploitation Pour Le Traitement du Mais

19   ("Seretram" or "Applicant") seeks discovery for use in foreign proceedings pursuant to 28 U.S.C.

20   § 1782(a).  Seretram seeks an order authorizing a subpoena to Google, Inc ("Google"), a resident

21   of this district, for documents to be used in connection with foreign proceedings brought by

22   Seretram.  Applicant seeks documents relating to a Google "Gmail" account maintained by Claes

23   Sebastian Strahle, including IP access logs, to locate Mr. Strahle, who, Applicant alleges, has

24   been linked to a € 17m fraud against Applicant.  Applicant has submitted a supporting declaration

25   of counsel that provides information regarding the alleged fraud, Mr. Strahle's alleged connection

26   to it, and ongoing criminal proceedings and investigations in France and the United Kingdom that

27   relate to the alleged fraud.

28

                                    ORDER

# I. LEGAL STANDARDS

"A district court may grant an application pursuant to 28 U.S.C. § 1782 where (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or internal tribunal or any interested person."[1]  However, simply because a court has the authority under Section 1782 to grant an application does not mean that it is required to do so.[2]  The Supreme Court has identified several factors that a court should weigh before ruling on a Section 1782 request:

> (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests.[3]

It is common for parties to request and obtain orders authorizing discovery *ex parte*.[4]  Such "ex parte applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it."[5]

# II. DISCUSSION

## A.    Authority to Issue Subpoena

The court has reviewed Applicants' papers and agrees that the statutory requirements have been met. First, Google is located in Mountain View, CA, which is located in this district. Second, the discovery sought is for use in proceedings in France and the U.K. Finally, Applicant is an interested person because it is the victim of the fraud at issue in the foreign proceedings.

---

[1] *In re Republic of Ecuador*, Case No. 3:10-mc-80225-CRB-EMC, 2010 WL 3702427, at *2 (N.D. Cal. Sep. 15, 2010); *see 28 U.S.C. § 1782(a).*

[2] *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) (emphasizing a "district court is not required to grant a § 1782(a) discovery application simply because it has the authority" to do so); *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) (a "district court's compliance with a § 1782 request is not mandatory").

[3] *In re Republic of Ecuador*, 2010 WL 3702427, at *2 (quoting Intel, 542 U.S. at 264-65).

[4] *See id.* (quoting *In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y.*1991*) (noting "it is common for 'the process of presenting the request to a court and to obtain the order authorizing discovery' to be conducted" ex parte)).

[5] *Id.* (citations omitted).

**B.    Discretionary Factors**

**1.    Jurisdictional Reach of Foreign Tribunal**

The first *Intel* factor considers whether the material sought is within the foreign tribunal's jurisdictional reach.

The Supreme Court explained that,

> [w]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.[6]

In this case, Google is not a party to the proceedings in either France or the United Kingdom. Google is based in California. The requested information does not appear to be within the jurisdictional reach of a French or English tribunal.

**2.    Nature and Receptivity of Foreign Tribunal**

Under the second *Intel* factor, district courts are encouraged to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."[7]  In the foreign civil suits, Applicant initiated proceedings in France and is expecting to initiate proceedings in England related to a fraud committed in France and England.[8]

Applicants believe that the Gmail account is the personal e-mail account of the alleged architect of this fraud, Mr. Strahle.[9] Mr. Strahle has "thus far evaded detection,"[10] and Applicant believes that it needs information about Mr. Strahle's Gmail account to locate him.[11]  The information sought by Applicant is relevant to the French and English proceedings and would

---

[6] *Intel*, 542 U.S. at 264.
[7] *Id.*
[8] Section 1782 applications may issue even where foreign proceedings has not yet been initiated. See *Intel*, 542 U.S. at 247 (explaining "the 'proceeding' for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be 'pending' or 'imminent'"); *In re Letter of Request from Crown Prosecution Serv. of United Kingdom*, 870 F.2d 686, 691 (D.D.C. 1989) (explaining the proceeding need only be "within reasonable contemplation" but "need not be pending").
[9] Docket No. 1 at [●]
[10] Docket No. 1 at [●]
[11] Docket No. 1 at [●]

1   assist the foreign tribunals conducting those proceedings.

2        **3.     Attempt To Circumvent Foreign Proof-Gathering Restrictions and Policies**

3        Although Section 1782 does not require the documents sought to be discoverable in the

4   foreign courts, a district court may consider whether an applicant seeks in bad faith "to

5   circumvent foreign proof-gathering restrictions or other policies of a foreign country or the

6   United States."[12]  Applicant has represented that it "is not seeking to circumvent limitations on

7   disclosure or discovery in the French or United Kingdom proceedings".[13]  Nothing in Applicant's

8   request demonstrates or suggests to the contrary.

9        **4.     Undue Intrusion or Burden**

10       Finally, Seretram has tailored its requests to cover only the categories of materials which

11  which Google publicly has indicated would be provided  in response to a subpoena: subscriber

12  information (such as the accountholder's name, creation date, phone number, and associated e-

13  mail addresses), sign-in IP addresses and associated time stamps, and any billing information for

14  paid services linked to the Gmail Account.  The request seeks information that will help Seretram

15  identify and locate the fraudster and trace the money that was stolen.[14]  The universe of

16

17  responsive information is likely to be readily identifiable and easy to produce, and the subpoena

18  request, therefore, does not appear unduly burdensome.

19

20

21

22

23

24

25

26

27  [12]     *See Intel*, 542 U.S. at 260-63, 265.

28  [13]     Docket No. 1 at [●]
    [14]     Docket No. 1 at [●]

        - 4 -

## III. CONCLUSION

Applicant's application for a subpoena is GRANTED. Applicant may serve the subpoena attached to its application, without prejudice to any motion to quash that Google or any other appropriate party may wish to file.

**IT IS SO ORDERED.**

DATED:        November ___, 2013

United States Magistrate Judge

# Exhibit B

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Northern District of California

| | | |
|---|---|---|
| In re Ex Parte Application of Societe D'Etude De Realisation et D'Exploitation Pour Le Traitement Du Mais | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Google, Inc., 1600 Amphitheatre Pkwy, Mountain View, CA 94043

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

      See Appendix A

| Place: Krista Cantu<br>300 S. First St., Suite 231<br>San Jose, CA 95113 | Date and Time: |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

      The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

        *CLERK OF COURT*

                                   OR

_____      _____
    *Signature of Clerk or Deputy Clerk*                       *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    Societe D'Etude De Realisation et D'Exploitation Pour Le Traitement Du Mais    , who issues or requests this subpoena, are:
Michael Lacovara, Esq., Freshfields Bruckhaus Deringer US LLP, 601 Lexington Avenue, New York, NY 10022; Telephone: (212) 277-4000; Email: michael.lacovara@freshfields.com

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. _____

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____    _____
                                    *Server's signature*

                                    _____
                                    *Printed name and title*

                                    _____
                                    *Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# **APPENDIX A**

## DEFINITIONS

1.      "You" or "Your" means Google, Inc.

2.      "Seretram" means Societe D'Etude De Realisation et D'Exploitation Pour Le Traitement Du Mais.

3.      "Document" or "Documents" shall have the same meaning of those terms as set forth in Rules 34(a) and 45 of the Federal Rules of Civil Procedure.

4.      "The Account" means the e-mail account associated with the email address 'claes79@gmail.com.'

## INSTRUCTIONS

The following instructions apply to each of the Document Requests:

1.      You must produce any and all documents requested as they are kept in the ordinary course of business and you must produce or identify the file or sub-file in which the responsive document was located.

2.      When the Document Requests provide specific examples of the types of documents called for, these examples are illustrative and are not meant to limit the full scope of any particular Document Request.

3.      All grounds for an objection to a Document Request must be stated with specificity.

4.      If a Document Request is objected to, state as clearly as possible whether documents are being produced in response to the Document Request, or whether documents facially responsive to the Document Request are being withheld or not being searched for. If documents facially responsive to the Document Request are being withheld or not being searched for, indicate clearly and specifically the nature of those

1

documents.

5.      In responding to these Document Requests, You must produce all responsive electronic mail or messages ("e-mail"), either in hard copy or electronic format, including any e-mail that has been deleted from a workstation but still can be retrieved from a server, or any archive, including the archive for a workstation or a server, or any backup tape, including the backup tape for any workstation or server.

6.      Whenever any document is or would have been required to be produced pursuant to these Document Requests and that document has been destroyed or lost, has been given to another person not now subject to Your control, or otherwise cannot be produced, set forth the contents of the document, the date of destruction, loss, or other disposition, the name of the person who ordered or authorized such destruction, loss, or disposition or otherwise has knowledge thereof, identify the document fully, and produce any other documents concerning the destroyed document, including without limitation all documents that refer to the destroyed document.

7.      Unless stated otherwise in a particular Request, these Requests call for the identification and production of information or documents generated, forwarded or received between January 1, 2013 and the present.

CLAIMS OF PRIVILEGE

If any of the Document Requests herein are objected to, whether in whole or in part, on the grounds that the information sought is privileged, You are requested to produce those portions of such documents and/or information as to which no privilege is claimed. With respect to each document or portion of a document or item of information

2

for which privilege is claimed:

    a.    identify the privileged document or information;

    b.    state the general subject matter of the document;

    c.    state the date, addressee or recipient(s) including, but not limited to, any cc's or bcc's, the author or initiator of such document or information, and any other person that reviewed, or had an opportunity to review, the document or information;

    d.    state specifically the exact privilege claimed, together with such facts as will enable the Court to determine the merit of the claim of privilege.

## DOCUMENT REQUESTS

You are requested to produce for inspection and copying the following documents from the files in Your possession, custody or control concerning (1) the Account and (2) any products or services offered by Google, Inc. or any of its subsidiaries or affiliates that are associated with or linked to the Account or its owner:

1.    Accountholder or subscriber information, including the accountholder's name, the creation date of the account, and any phone numbers or e-mail addresses associated with or linked to the account;

2.    Documents listing the IP address(es) from which the Account was accessed, along with time stamps indicating when the Account was accessed from that IP address;

3.    Any billing information for paid services linked to the Account.

3